No. 11-3750

---

## THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

### RYAN HART,

*Plaintiff-Appellant,*

v.

### ELECTRONIC ARTS INC.

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

**DEFENDANT-APPELLEE'S PETITION FOR REHEARING *EN BANC***

---

MCCUSKER, ANSELMI, ROSEN
   & CARVELLI, P.C.
Bruce S. Rosen
210 Park Avenue, Suite 301
Florham Park, New Jersey 07932
Tel: (973) 635-6300
Fax: (973) 635-6363

DAVIS WRIGHT TREMAINE LLP
Elizabeth A. McNamara
Samuel M. Bayard
1633 Broadway 27th floor
New York, New York 10019
Tel: (212) 489-8230
Fax: (212) 489-8340

*Attorneys for Defendant-Appellee*
*Electronic Arts Inc.*

# TABLE OF CONTENTS

**Page**

STATEMENT OF COUNSEL ................................................................. v

FACTUAL BACKGROUND ................................................................. 1

REASONS FOR REHEARING.............................................................. 1

I.    THE MAJORITY'S MEDIUM-SPECIFIC FOCUS DIRECTLY
      CONFLICTS WITH *BROWN* ....................................................... 3

II.   THE MAJORITY'S ADOPTED TEST WOULD MAKE
      ACTIONABLE IN THIS CIRCUIT THE REALISTIC DEPICTION
      OF AN INDIVIDUAL IN ANY EXPRESSIVE WORK .............................. 8

CONCLUSION ................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

CASES

*Abdul-Jabbar v. Gen. Mtrs. Corp.*,
   85 F.3d 407 (9th Cir. 1996) ............................................................. 11

*ACLU v. Mukasey,*
   534 F.3d 181 (3d Cir. 2008)............................................................. 14

*Baggett v. Bullitt*,
   377 U.S. 360 (1964)......................................................................... 12

*Brown v. Entertainment Merchants Ass'n,*
   131 S. Ct. 2729 (2011) ............................................................ passim

*C.B.C. Distrib. & Mktg., Inc. v. Major League Baseball Advanced Media,*
   *L.P.*, 505 F.3d 818 (8th Cir. 2007)............................................. 6, 9, 11

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*,
   95 F.3d 959 (10th Cir. 1996) ................................................. 10, 11, 13

*Citizens United v. FEC*,
   130 S.Ct. 876 (2010) ....................................................................... 12

*Comedy III Prods. v. Gary Saderup, Inc.*,
   21 P.3d 797 (Cal. 2001) ................................................................. 3, 7

*Dora v. Frontline Video*,
   15 Cal. App. 4th 536 (1993) ............................................................. 12

*ETW Corp. v. Jireh Publ'g*,
   332 F.3d 915 (6th Cir. 2003) ..................................................... passim

*Facenda v. N.F.L. Films, Inc.*,
   542 F.3d 1007 (3d Cir. 2008)...................................................... 10, 11

*Frosch v. Grosset & Dunlap, Inc.*,
   75 A.D.2d 768 (N.Y. App. Div., 1st Dep't 1980) ............................. 10

*Guglielmi v. Spelling-Goldberg Prods.*,
   603 P.2d 454 (Cal. 1979) .............................................................. 9, 11

DWT 22080121v11 0058278-000010

*Hicks v. Casablanca Records*,
 464 F. Supp. 426 (S.D.N.Y. 1978) ........................................................9

*Hoepker v. Kruger*,
 200 F. Supp. 2d 340 (S.D.N.Y. 2002) ..................................................9

*Jenkins v Dell Publ'g Co.*,
 251 F.2d 447 (3d Cir. 1958).................................................................9

*Joseph Burstyn v. Wilson*,
 343 U.S. 495 (1952)..............................................................................3

*JS ex rel. Snyder v. Blue Mountain School Dist.*,
 650 F.3d 915 (3d Cir. 2011).............................................................. 14

*Matthews v. Wozencraft*,
 15 F.3d 432 (5th Cir. 1994).................................................................9

*McFarland v. Miller*,
 14 F.3d 912 (3d Cir. 1994)................................................................ 10

*Montana v. San Jose Mercury News*,
 34 Cal. App. 4th 790 (1995) ............................................................. 12

*Montgomery v. Montgomery*,
 60 S.W.3d 524 (Ky. 2001) ............................................................ 9, 13

*New Kids on the Block v. News America Publ'g*,
 971 F.2d 302 (9th Cir. 1992) ............................................................ 12

*Nichols v. Moore*,
 334 F. Supp. 2d 944 (E.D. Mich. 2004)............................................ 10

*Nussenzweig v. DiCorcia*,
 11 Misc. 3d 1051(A), 2006 WL 304832 (N.Y. Sup. Ct. Feb. 8, 2006),
 *aff'd on other grounds*, 38 A.D.3d 339 (N.Y. App. Div., 1st Dep't 2007) ...........9

*Parks v. LaFace Records*,
 329 F.3d 437 (6th Cir. 2003) ............................................................ 13

*Rogers v. Grimaldi*,
 875 F.2d 994 (2d Cir. 1989).................................................... 9, 10, 13

iii

*Romantics v. Activision Publ'g, Inc.*,
    574 F. Supp. 2d 758 (E.D. Mich. 2008)............................................................. 13

*Ruffin-Steinback v. dePasse*,
    82 F. Supp. 2d 723 (E.D. Mich. 2000), *aff'd*, 267 F.3d 457 (6th Cir.
    2001) ...................................................................................................... 10, 13

*Seale v. Gramercy Pictures*,
    949 F. Supp. 331 (E.D. Pa. 1996) ............................................................. 10, 13

*Speiser v. Randall*,
    357 U.S. 513 (1958).......................................................................................... 12

*Taylor v. NBC*,
    No. BC110922, 1994 WL 780690 (Cal. Super. Ct. Sept. 12, 1994)...................9

*Tyne v. Time Warner Entm't*,
    901 So.2d 802 (Fla. 2005).................................................................................. 10

*United States v. Stevens*,
    533 F.3d 218 (3d Cir. 2008), *aff'd*, 559 U.S. 460 (2010) ................................. 14

*Valentine v. CBS, Inc.*,
    698 F.2d 430 (11th Cir. 1983) ...........................................................................9

*Zacchini v. Scripps-Howard Broadcasting Co.*,
    433 U.S. 562 (1977)............................................................................................3

## OTHER AUTHORITIES

Adam Liptak, *When It May Not Pay to Be Famous*, N.Y. Times, June 2,
    2013 .....................................................................................................................2

Restatement (Third) of Unfair Competition §§ 46, 47 cmt. c (1995)................. 9, 13

DWT 22080121v11 0058278-000010

## STATEMENT OF COUNSEL

Undersigned counsel express a belief, based on reasoned and studied professional judgment, that the Panel's 2-1 majority opinion directly conflicts with the Supreme Court's decision in *Brown v. Entertainment Merchants Ass'n*, 131 S. Ct. 2729 (2011), and with this and other courts' authorities establishing the constitutional limits on right-of-publicity claims. *En banc* review is exceptionally important to protect the First Amendment rights of all content creators—whether they are biographers, documentarians, visual artists, or video-game developers—to depict real-life figures in realistic settings.

DWT 22080121v11 0058278-000010

## FACTUAL BACKGROUND

Plaintiff-appellant Ryan Hart, who played quarterback for Rutgers from 2002 to 2005, alleges that Electronic Arts Inc. ("EA") violated his publicity rights by using his likeness in its *NCAA Football* video game.  Each annual edition of the *NCAA Football* work includes thousands of unnamed virtual players, along with storylines and an array of original audio-visual elements.    Judge Ambro summarized the breadth of the work's content:  "*NCAA Football* involves myriad original graphics, videos, sound effects, and game scenarios.  These artistic aspects permit a user to direct the play of a college football team whose players may be based on a current roster, a past roster, or an entirely imaginary roster comprised of made-up players.  Users are not reenacting real games, but rather are directing the avatars in invented games and seasons.    Further, the 'Campus Legend' and 'Dynasty Mode' features permit users to control virtual players and teams for multiple seasons, creating the means by which they can generate their own narratives." Dissent at 9-10.

## REASONS FOR REHEARING

For decades, this Court and others have recognized that the First Amendment protects authors, filmmakers, and others against right-of-publicity claims arising from their use of individuals' names and likenesses in expressive works.  "That is why Mark Zuckerberg, the founder of Facebook, was not entitled

to a cut of the profits of the film 'The Social Network' or to prevent its makers from depicting his rise."[1] The majority, however, departs from these established First Amendment principles and holds that EA's depiction of Appellant is not "transformative," and thus not constitutionally protected under an adopted version of the California Supreme Court's transformative-use test, solely because *NCAA Football* depicts Hart in a realistic setting—as quarterback for the Rutgers football team—and does not alter his likeness. Opinion ("Op.") at 52-53 (Exhibit A).

This holding can only be interpreted in one of two ways. If, as Judge Ambro says, the majority's holding is video game–specific (Dissent at 9), then it directly conflicts with the Supreme Court's holding in *Brown* that video games are entitled to the same First Amendment protection as all other works. *See Brown*, 131 S. Ct. at 2733, 2737-38, 2740. If, however, it is meant to apply equally to all expressive works, then it represents a dramatic departure from established First Amendment jurisprudence by making actionable the realistic depiction of well-known individuals in an array of expressive works that routinely depict people in the settings that made them famous, including documentaries, biographies,

---

[1] Adam Liptak, *When It May Not Pay to Be Famous*, N.Y. Times, June 2, 2013, http://www.nytimes.com/2013/06/02/sunday-review/between-the-first-amendment-and-right-of-publicity.html?_r=0.

photography, and docudramas.  *See* Op. at 27.  Either way, the majority decision

erodes essential First Amendment protections and warrants *en banc* review.[2]

## I.

### THE MAJORITY'S MEDIUM-SPECIFIC FOCUS DIRECTLY CONFLICTS WITH *BROWN*

Judge Ambro observes that the majority has created a medium-specific test:

although the majority "acknowledge[s] the need for uniform First Amendment

treatment of different mediums in the abstract, it is difficult to reconcile [its] actual

application of the Transformative Use Test to [EA's] video game" with cases

extending constitutional protection to other expressive works that depict real-life

individuals.  Dissent at 6 n.5.  This discriminatory approach directly conflicts with

*Brown*.  *Id.* at 7-8.  *See also Joseph Burstyn v. Wilson*, 343 U.S. 495, 503 (1952)

(holding that "the basic principles of freedom of speech and the press, like the First

---

[2] The Supreme Court has offered little guidance here.  The Court has addressed
publicity rights only once, in *Zacchini v. Scripps-Howard Broadcasting Co.*, 433
U.S. 562 (1977).  But *Zacchini* involved the defendant's alleged appropriation of
the plaintiff's "entire act," a taking more akin to a common law copyright claim,
not the more typical use of a name or likeness.  Its application has been limited to
its facts.  *Id.* at 574-575 and n.10 ("[T]he case before us is more limited than the
broad category of lawsuits that may arise under the heading of 'appropriation.'").
*See also ETW Corp. v. Jireh Publ'g*, 332 F.3d 915, 956 (6th Cir. 2003) ("[O]ne
must look beyond *Zacchini* inasmuch as *Zacchini* has been criticized as being very
'narrowly drawn' in that it involved the wholesale reproduction of a live 'entire act
. . . .'"); *Comedy III Prods. v. Gary Saderup, Inc.*, 21 P.3d 797, 806 (Cal. 2001)
("*Zacchini* was not an ordinary right of publicity case: the defendant television
station had appropriated the plaintiff's entire act, a species of common law
copyright violation").

DWT 22080121v11 0058278-000010

Amendment's command, do not vary" when a new and different medium for communication appears).

In *Brown*, the Supreme Court held that it was unconstitutional to treat video games differently than other expressive works. 131 S. Ct. at 2733, 2737-38, 2740. Invalidating a restriction on speech that applied only to video games, the Court declared that "California has singled out the purveyors of video games for disfavored treatment—at least when compared to booksellers, cartoonists, and movie producers—and has given no persuasive reason why." *Id*. at 2740. The Supreme Court left no doubt that interactive video games, "like the protected books, plays and movies that preceded them," are core expressive works and are "as much entitled to the protection of free speech as the best of literature." *Id*. at 2733, 2737 n.4 (internal quotation marks omitted).

Unfortunately, at every step in its analysis, the majority calls out video games for separate and disfavored treatment. As Judge Ambro notes, the majority's adopted test "penalize[s] EA for the realism and financial success of *NCAA Football*," a position that cannot be "reconcile[d] with First Amendment protection afforded to true-to-life depictions of real figures" in other expressive works, regardless of whether they are "produced for profit." Dissent at 2-3. Under the majority's adopted test, because "the digital avatar does closely resemble [Appellant]" and because the context in which he appears is realistic, EA's

4

depiction of Appellant's likeness does not qualify for constitutional protection. Op. at 52-53. "The digital Ryan Hart does what the actual Ryan Hart did while at Rutgers: he plays college football, in digital recreations of college football stadiums, filled with all the trappings of a college football game. This is not transformative . . . ." *Id.* at 53. Yet the majority opinion does not cite a single right-of-publicity case that has denied constitutional protection to a book, motion picture, or similar expressive work on the grounds that it realistically portrayed its subject in the setting which made the person famous. Indeed, the creators of such works long have enjoyed the First Amendment right to depict individuals as they actually appear and doing what they actually do.[3]

The majority treats video games differently, saying that video games "lend themselves to easy partition" and therefore pose a "particularly acute" "concern" in right-of-publicity cases. Op. at 59. But a court would never slice and dice a documentary or a biography, partitioning the realistic depictions of its subjects from the work as a whole, or isolating and considering only a particular paragraph or chapter from a work. The majority's adopted test impermissibly denies the creators of video games the same First Amendment protections that this and other courts have afforded all other expressive works.

---

[3] *See* cases cited in footnotes 7-11.

5

The majority's medium-specific treatment of video games is apparent in its discussion of the fantasy-sports games at issue in *C.B.C. Distribution & Marketing, Inc. v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818 (8th Cir. 2007). Op. at 52 n.37. *C.B.C.* involved a right-of-publicity claim filed by athletes who objected to the use of their names, likenesses, and performance statistics on a fantasy-sports website. 505 F.3d at 823. The Eighth Circuit held that the website's use of the athletes' identities was protected by the First Amendment. *Id.* at 823-24. The majority, however, denies EA's video games the same protection accorded to the fantasy-sports website on the ground that "[t]he presence of a *digital avatar that recreates Appellant in a digital medium* differentiates this matter from *C.B.C.*" Op. at 52 n.37 (emphasis added).[4]  This invidious medium-specific distinction violates First Amendment principles; it does not matter whether an athlete's identity is recreated by an artist who uses oil paints, by a filmmaker who casts an actor resembling the athlete, or, as here, by a game designer who creates an avatar

---

[4] The majority's disparate treatment of video games is also evident in its attempt to distinguish the protected use of Tiger Woods' likeness in the painting at issue in *ETW*. Judge Ambro points out that there is no way to harmonize the majority's conclusion that Appellant's depiction is "not transformative" because he "plays college football, in digital recreations of college football stadiums, filled with the trappings of a college football game" (Op. at 53), with the Sixth Circuit's holding in *ETW* that a literal depiction of Tiger Woods shown doing exactly what made him famous—playing golf at the Masters, surrounded by all the "trappings" of the Masters—was transformative. *See* Dissent at 5-6; *ETW*, 332 F.3d at 936-38.

resembling him. *Brown* forecloses such a distinction. *See Brown*, 131 S. Ct. at 2733, 2737-38 & n.4, 2740.

By restricting its analysis to Appellant's physical appearance and the game's realistic setting, the majority calls out video games for separate treatment. The majority's adopted test ignores the very interactivity that *Brown* recognized as a key reason to place video games on the same constitutional footing as books or movies. *Brown*, 131 S. Ct. at 2737-38.[5] EA's work allows the user to construct his or her own fictional narratives about college football. By manipulating the complex virtual world created by the game designers, the user may "recreate the setting of a bitter defeat" and achieve what the majority calls a "cathartic readjustment of history" (Op. at 57); for example, the virtual 2005 Rutgers team could finish its season 12-0 instead of 7-5, or its last-minute loss to Arizona State in the Insight Bowl could be transformed into a come-from-behind victory.[6] Other elements make *NCAA Football* even more transformative, permitting the user to create his own story: the "Dynasty" mode allows the user to control a college

---

[5] The majority considers the games' interactivity only through the narrow lens of whether the avatars can be changed and ignores that its own example of a "cathartic readjustment of history" is classically transformative. Op. at 57.

[6] Like the games in *Brown*, *NCAA Football* uses Appellant and other real-life athletes as the "raw materials" or "art-imitating-life starting point" from which users create the fictional dramas of each gameplay, enabling them to "identify with the [players]", "judge them and quarrel with them, to experience their joys and sufferings as the [users'] own." *Brown*, 131 S. Ct. at 2738; *Comedy III*, 21 P.3d at 809; App.61.

7

football program for up to thirty years, and the "Campus Legend" mode allows the user to control a single virtual player from high school through his collegiate career. App.474. The majority elects to "set aside" these transformative elements because "realistic depictions of the players are a necessary element" of the game. Op. at 57 & n.44. Except as a video game–specific approach, this reasoning cannot be reconciled with the routine depiction of real people as a "necessary element" of documentaries, biographies and docudramas.

As Judge Ambro observes, the majority's adopted test "creates a medium-specific metric that provides less protection to video games than other expressive works." Dissent at 9. The adopted test directly conflicts with *Brown* and cannot stand.

## II.

### THE MAJORITY'S ADOPTED TEST WOULD MAKE ACTIONABLE IN THIS CIRCUIT THE REALISTIC DEPICTION OF AN INDIVIDUAL IN ANY EXPRESSIVE WORK

Applying the majority's adopted test to the realistic depiction of individuals in other expressive works—such as documentaries, biographies, photographs and the like—would subject them to liability or self-censorship, effectively granting individuals a right to veto (or demand a license fee for) the use of their names and likenesses in expressive works. This result would make the Third Circuit the outlier in First Amendment jurisprudence and would conflict with well-established

law across the country recognizing that these works are entitled to as much First Amendment protection as works of fantasy, fiction, or parody.

A long line of cases from this Circuit and others holds that the First Amendment protects the use of real-life figures in articles, films, books, plays and other works, whether factual or fictional.[7] Among the uses that other circuits have protected: an artist's use of Tiger Woods' realistic likeness in a painting showing him at The Masters surrounded by other famous golfers[8]; a fantasy-sports website's use of professional baseball players' names, statistics, and other biographical information;[9] and trading-card company's use of similar elements of players'

---

[7] *See, e.g., Jenkins v Dell Publ'g Co.,* 251 F.2d 447, 450-52 (3d Cir. 1958) (tabloid news report); *Rogers v. Grimaldi,* 875 F.2d 994, 1004-05 (2d Cir. 1989) (movie title) ("*Rogers*"); *Matthews v. Wozencraft,* 15 F.3d 432, 439-40 (5th Cir. 1994) (biographical novel); *Valentine v. CBS, Inc.,* 698 F.2d 430, 433 (11th Cir. 1983); *Hoepker v. Kruger,* 200 F. Supp. 2d 340, 349 (S.D.N.Y. 2002) (visual art); *Hicks v. Casablanca Records,* 464 F. Supp. 426, 433 (S.D.N.Y. 1978) (motion picture); *Guglielmi v. Spelling-Goldberg Prods.,* 603 P.2d 454, 455-64 (Cal. 1979) (television docudrama); *Nussenzweig v. DiCorcia,* 11 Misc. 3d 1051(A), 2006 WL 304832, at *5-8 (N.Y. Sup. Ct. Feb. 8, 2006) (art photography), *aff'd on other grounds,* 38 A.D.3d 339 (N.Y. App. Div., 1st Dep't 2007); *Taylor v. NBC,* No. BC110922, 1994 WL 780690, at *2 (Cal. Super. Ct. Sept. 12, 1994) (television docudrama); *Montgomery v. Montgomery,* 60 S.W.3d 524, 529 (Ky. 2001) (music video). The Restatement synthesizes this approach, stating that the right-of-publicity is "fundamentally constrained by the public and constitutional interest in freedom of expression," citing examples such as an "unauthorized print or broadcast biography," or "use of another's identity in a novel, play, or motion picture." Restatement (Third) of Unfair Competition § 47 cmt. c (1995).

[8] *ETW,* 332 F.3d at 937-38.

[9] *C.B.C.,* 505 F.3d at 823-24.

9

identities on parody baseball cards.[10]    Other courts have held that the First Amendment barred right-of-publicity claims targeting realistic works ranging from a biography of Marilyn Monroe to docudramas about the Black Panther Party and The Temptations, and from the motion picture *The Perfect Storm* to the documentary film *Bowling for Columbine*.[11]

Echoing the concerns of its sister circuits, this Court previously cautioned that "courts must circumscribe the right of publicity *so that [individuals] do not get a right that extends beyond commercial advertisements to other works of artistic expression*." *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1032 (3d Cir. 2008) (emphasis added).[12]    The italicized language highlights that this Court recognized that most successful right-of-publicity claims target commercial speech, where the person's name or likeness has been used to endorse an unrelated product.[13]    The

---

[10] *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 968-76 (10th Cir. 1996).

[11] *Frosch v. Grosset & Dunlap, Inc.*, 75 A.D.2d 768, 769 (N.Y. App. Div., 1st Dep't 1980); *Seale v. Gramercy Pictures*, 949 F. Supp. 331, 337 (E.D. Pa. 1996); *Ruffin-Steinback v. dePasse*, 82 F. Supp. 2d 723, 730-31 (E.D. Mich. 2000), *aff'd*, 267 F.3d 457, 461-62 (6th Cir. 2001); *Tyne v. Time Warner Entm't*, 901 So.2d 802, 810 (Fla. 2005); *Nichols v. Moore*, 334 F. Supp. 2d 944, 956 (E.D. Mich. 2004).

[12] The caution expressed in *Facenda* is consistent with the Second Circuit's observation that, because of the potentially broad reach of publicity rights, courts should ensure that expansive constitutional defenses exist to protect expressive works. *Rogers*, 875 F.2d at 1004.

[13] *See, e.g.*, *Facenda*, 542 F.3d at 1018 (infomercial to promote video game); *McFarland v. Miller*, 14 F.3d 912, 914 (3d Cir. 1994) (name used for restaurant);

majority opinion ignores *Facenda*'s intent to shield expressive works from right-of-publicity claims and, tellingly, omits the italicized language when it quotes this passage from *Facenda*. Op. at 46.

If the majority's adopted test is applied equally to all expressive works, then a "broad swath" (Op. at 27) of realistic expressive works will face right-of-publicity claims, creating a sea change in the law. Consider, for example, how the majority's adopted test would expose two acclaimed sports documentaries: Ken Burns' iconic *Baseball*, which examines our national pastime and includes the realistic depiction of hundreds of baseball players; and the Oscar-winning *Undefeated*, which follows an underprivileged and underfunded high-school football team and includes the realistic portrayal of numerous team players. Both works realistically depict their subjects in their real-life contexts: on the baseball diamond and the football field. These documentaries do not fictionalize their subjects, which the majority argues distinguishes the Rudolph Valentino docudrama in *Guglielmi*; they do not parody them, which the majority argues distinguishes the humorous trading cards in *Cardtoons;* and the documentaries do not transform the meaning of each and every player on the field, which the majority argues distinguishes *ETW.* Op. at 41. They do what the majority says

---

*Abdul-Jabbar v. Gen. Mtrs. Corp.*, 85 F.3d 407 (9th Cir. 1996) (advertisement for automobiles).

makes EA's alleged depiction actionable: they use actual names of real people and depict their subjects in a realistic setting.[14]

Whether intentional or not, the majority's adopted test inevitably will chill the creation of realistic expressive works. By holding that the First Amendment does not protect the realistic depiction of an individual in an expressive work (Op. at 53, 57), the majority has created a vague and internally inconsistent test that will be impossible to navigate, causing speakers to "steer far wider of the unlawful zone," *Speiser v. Randall*, 357 U.S. 513, 526 (1958), and to restrict their expression "to that which is unquestionably safe." *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964). *See also Citizens United v. FEC*, 130 S.Ct. 876, 892 (2010) (noting that "First Amendment freedoms need breathing space to survive" and declining to adopt an interpretation of the law "that requires intricate case-by-case determinations to verify whether political speech is banned").

At its core, the majority opinion has elevated the personal property interest in one's publicity rights into a "fundamental" right that stands on equal footing

---

[14] The majority's test would result in less protection for expressive works in this Circuit than in California, from which its adopted test derived. This is because California recognizes additional defenses—the "public interest" and "public affairs" tests—to right-of-publicity claims. *See New Kids on the Block v. News America Publ'g*, 971 F.2d 302, 310 (9th Cir. 1992); *Montana v. San Jose Mercury News*, 34 Cal. App. 4th 790, 793-96 (1995) (commemorative poster of the Joe Montana's Super Bowl victory); *Dora v. Frontline Video*, 15 Cal. App. 4th 536, 542-46 (1993) (documentary about surfing). These additional protections have not been recognized in this Circuit.

12

with the First Amendment. Op. at 33. By doing so, it elects to protect publicity rights at the expense of the First Amendment and exposes previously protected expressive activity to liability. *See id.* at 27, 33-35. The majority rejects the *Rogers* test that has been followed by courts in this and other circuits[15] and by the Restatement[16] because that test "would potentially immunize a *broad swath of tortious activity.*" *Id.* at 27 (emphasis added). *See also id.* at 35 ("the right of publicity is broader and, by extension, protects a greater swath of property interests" than the Lanham Act). The majority's approach places this Circuit in direct conflict with other circuits that have concluded that the personal interests in publicity rights are *less compelling* than those served by, for example, copyright and trademark law, and balance the interests to protect expressive works. *See Cardtoons*, 95 F.3d at 976 ("The justifications for the right of publicity are not nearly as compelling as those offered for other forms of intellectual property . . . ."); *ETW*, 332 F.3d at 930 ("The rationales underlying recognition of a right of publicity are generally less compelling than those that justify rights in trademarks or trade secrets.") (quoting Restatement (Third) of Unfair Competition § 46 cmt.

_____

[15] *See, e.g., Rogers*, 875 F.2d at 1004; *Parks v. LaFace Records*, 329 F.3d 437, 461 (6th Cir. 2003); *Seale v. Gramercy Pictures*, 949 F. Supp. 331, 336-38 (E.D. Pa. 1996); *Romantics v. Activision Publ'g, Inc.*, 574 F. Supp. 2d 758, 766 (E.D. Mich. 2008); *Ruffin-Steinback*, 82 F. Supp. 2d at 730. *See also Montgomery*, 60 S.W.3d at 530.

[16] Restatement (Third) of Unfair Competition § 47 cmt. c.

c).  Under the majority's decision, this Court will stand alone in prioritizing personal financial interests over society's interest in freedom of speech.

Nor can the majority's approach be reconciled with this Court's First Amendment jurisprudence broadly protecting speech in other contexts.  When balancing First Amendment interests against compelling societal interests—for example, protection of minors from exposure to sexually explicit material online, prevention of animal cruelty, and maintenance of discipline in schools—this Court has consistently given due weight to freedom of speech's value to a free society. *See, e.g.*, *ACLU v. Mukasey,* 534 F.3d 181 (3d Cir. 2008); *United States v. Stevens,* 533 F.3d 218 (3d Cir. 2008), *aff'd*, 559 U.S. 460 (2010); *JS ex rel. Snyder v. Blue Mountain School Dist.*, 650 F.3d 915 (3d Cir. 2011).  The majority's decision is a marked departure from this Circuit's signal protection of speech.

## CONCLUSION

The majority opinion has created a medium-specific test that directly conflicts with *Brown*.  If the majority decision is meant to apply equally to all expressive works, however, then it represents a dramatic shift in First Amendment jurisprudence, creating an avenue in this Circuit to challenge any realistic expressive works.  The full Third Circuit ought to decide whether the majority's approach is consistent with the First Amendment.   EA respectfully requests rehearing *en banc*.

14

Dated:    New York, New York
          June 4, 2013

                              Respectfully submitted,

                              DAVIS WRIGHT TREMAINE LLP

                              ___/s/ Elizabeth A. McNamara___

                              1633 Broadway 27th floor
                              New York, New York 10019
                              Tel:  (212) 489-8230
                              Fax:  (212) 489-8340
                              New York State Bar No. 1930643
                              *Attorneys for Defendant-Appellee*
                              *Electronic Arts Inc.*

*Of Counsel:*
  Bruce S. Rosen
  Samuel M. Bayard

DWT 22080121v11 0058278-000010

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This Petition complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Times New Roman font.


                        ___ /s/ Elizabeth A. McNamara___

                        DAVIS WRIGHT TREMAINE LLP
                        1633 Broadway 27th floor
                        New York, New York 10019
                        Tel:  (212) 489-8230
                        Fax:  (212) 489-8340

                        *Attorneys for Defendant-Appellee*
                        *Electronic Arts Inc.*

June 4, 2013

## CERTIFICATE OF SERVICE UPON COUNSEL

I hereby certify that I caused the foregoing Petition for Rehearing *En Banc* to be served on counsel for Plaintiff-Appellant, Amici Appellants, and Amici Appellees, all registered filing users, via the Notice of Docket Activity generated by the Court's electronic filing system (i.e., CM/ECF) pursuant to Local Appellate Rules 31.1(d) and 113.4(a):

Michael Rubin, Esq.
Altshuler, Berzon, Nussbaum & Rubin
177 Post Street, Suite 300
San Francisco, CA 94108

Timothy J. McIlwain, Esq.
McIlwain & Mullen
P.O. Box #1538
Hoboken, NJ 07030

Keith A. McKenna, Esq.
96 Park Street
Montclair, NJ 07042

*Counsel for Appellant Ryan Hart*

P. Casey Pitts, Esq.
Michael Rubin, Esq.
Altshuler, Berzon, Nussbaum & Rubin
177 Post Street, Suite 300
San Francisco, CA 94108

*Counsel for Major League Baseball Players Association, Major League Soccer Players Union, NFL Players Association, NHL Players Association, and National Basketball Players Association, Amici Appellant*

Duncan W. Crabtree-Ireland, Esq.
Screen Actors Guild
5757 Wilshire Boulevard, 7th Floor
Los Angeles, CA 90036

*Counsel for Screen Actors Guild, Inc., American Federation of Television
and Radio Artists, AFL-CIO, and Luminary Group LLC, Amici Appellant*

Nathan E. Siegel, Esq.
Levine, Sullivan, Koch & Schulz
1899 L Street, N.W., Suite 200
Washington, DC 20036

*Counsel for Advance Publications, Inc., A&E Television Networks, Inc.,
Activision Blizzard, Inc., Bloomberg News, Capcom U.S.A., Inc., Comic
Book Legal Defense Fund, Daily News, L.P., Dow Jones Local Media
Group, ESPN, Inc., First Amendment Coalition, Forbes, Inc., Freedom
Communications, Inc., Gannett Co., Inc., Gawker Media, Hybrid Films, Inc.,
The McClatchy Company, National Public Radion, Inc., The New York Times
Co., North Jersey Media Group Inc., Pennsylvania Newspaper Association,
Press-Enterprise Company, The Radio Television Digital News Association,
Reporters Committee for Freedom of the Press, Square-Enix, Inc., Take-Two
Interactive Software, Inc., THQ, Inc., The Washington Post Co., and Wenner
Media, Amici Appellee*

Douglas E. Mirell, Esq.
Eric B. Schwartz, Esq.
Loeb & Loeb
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, CA 90067

*Counsel for Motion Picture Association of America, Inc., Amicus Appellee*

Julie A. Ahrens, Esq.
Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305

*Counsel for the Organization for Transformative Works, International Documentary Association, International Documentary Association, Digital Media Law Project, Irene Calboli, Danielle M. Conway, Jon M. Garon, Deborah R. Gerhardt, Greg Lastowka, Mark A. Lemley, Yvette Joy Liebesman, Phillip R. Malone, Jason M. Schultz, Jessica Silbey, Amici Appellee*

                     /s/ Elizabeth A. McNamara

DAVIS WRIGHT TREMAINE LLP
1633 Broadway 27th floor
New York, New York 10019
Tel:  (212) 489-8230
Fax:  (212) 489-8340

*Attorneys for Defendant-Appellee Electronic Arts Inc.*

June 4, 2013

## CERTIFICATE OF VIRUS CHECK

I hereby certify that a virus check was performed on the E-Brief using

Sophos Endpoint Security, version 10.0.4 and that no viruses were found.

                                          /s/ Elizabeth A. McNamara

DAVIS WRIGHT TREMAINE LLP
1633 Broadway 27th floor
New York, New York 10019
Tel: (212) 489-8230
Fax: (212) 489-8340

*Attorneys for Defendant-Appellee*
*Electronic Arts Inc.*

June 4, 2013