NO. 11-3750

IN THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

RYAN HART,

PLAINTIFF-APPELLANT,

v.

ELECTRONIC ARTS, INC.,

DEFENDANT-APPELLEE.

On Appeal From The United States District Court
For The District of New Jersey
Case No. 3:09-cv-5990-FLW
Honorable Freda L. Wolfson, District Judge

**AMICI CURIAE BRIEF OF ELECTRONIC FRONTIER FOUNDATION,
INTERNATIONAL DOCUMENTARY ASSOCIATION, THE
ORGANIZATION FOR TRANSFORMATIVE WORKS AND THE
DIGITAL MEDIA LAW PROJECT IN SUPPORT OF PETITION FOR
REHEARING EN BANC**

Julie A. Ahrens
Timothy Greene
Stanford Law School
Center for Internet and Society
559 Nathan Abbott Way
Stanford, CA 94305
Telephone:  (650) 723-2511
Facsimile:   (650) 725-4086
jahrens@law.stanford.edu

# TABLE OF CONTENTS

STATEMENT OF INTEREST ................................................................1

INTRODUCTION ............................................................................1

ARGUMENT ..................................................................................2

    I.      The Panel Decision Presents Exceptional Circumstances
           That Merit Rehearing ..........................................................2

    II.     The Panel Decision Sets A Dangerous Precedent For
           Free Speech ....................................................................4

CONCLUSION ...............................................................................7

# TABLE OF AUTHORITIES

## CASES

*C.B.C. Distrib. & Mktg., Inc. v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818 (8th Cir. 2007) .............................................................4

*Comedy III Productions v. Gary Saderup*, 21 P.3d 797 (Cal. 2001) ........................2

*ETW Corp. v. Jireh Publishing*, 332 F.3d 915 (6th Cir. 2003) ..................................3

*Facenda v. NFL Films, Inc.*, 542 F.3d 1007 (3d Cir. 2008) ......................................4

*Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400 (2001) ........................5

*Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860 (1979) ...........................5, 6

*Lohan v. Perez (Pitbull)*, Case 2:11-cv-05413, (E.D.N.Y. Mar. 12, 2012) ........................................................................................4

*Seale v. Gramercy Pictures*, 949 F. Supp. 331 (E.D. Pa. 1996) ...............................5

*White v. Samsung Electronics America, Inc.*, 971 F.2d 1395 (9th Cir. 1992) ...........4

*Winter v. DC Comics*, 69 P.3d 473 (Cal. 2003) ........................................................2

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER ENTITIES WITH A DIRECT FINANCIAL INTEREST IN LITIGATION

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure Amici Curiae Electronic Frontier Foundation, International Documentary Association, The Organization for Transformative Works, and the Digital Media Law Project (collectively, "Amici") state that none of Amici has a parent corporation, and that no publicly held corporation owns 10% or more of the stock of any of Amici.

## STATEMENT OF INTEREST

Publicity rights are asserted against a broad array of First Amendment speakers and burden a wide variety of speech and expression interests. Amici consist of the Electronic Frontier Foundation, International Documentary Association, The Organization for Transformative Works, and the Digital Media Law Project (collectively, "Amici"). Each has a strong interest in ensuring the First Amendment provides consistent and reliable protection to would-be speakers by placing a clear constitutional limit on the types of speech and expression subject to publicity rights claims. Pursuant to Federal Rule of Appellate Procedure 29(c)(5), no one, except for undersigned counsel, has authored the brief in whole or in part, or contributed money towards the preparation of this brief.

Both Appellant and Appellee have consented to the filing of this brief.

## INTRODUCTION

Courts countrywide agree the First Amendment must limit the scope of publicity rights in order to protect the free speech and expression interests crucial to our democracy. While it paid lip service to that commitment, the Panel Decision in fact gave short shrift to those interests. By misconstruing the precedent on which it relied, and in the process unduly discounting important free speech interests, the panel cast a pall of legal uncertainty over a wide range of activity encompassing far more than the video game at issue here.

Amici are concerned that the Panel Decision is rooted primarily in sympathy for Mr. Hart's predicament rather than a careful balancing between publicity rights and free speech. The Panel Decision deserves further review.

## ARGUMENT

### I.    The Panel Decision Presents Exceptional Circumstances That Merit Rehearing

As explained in Judge Ambro's dissent in this case, the Panel Decision's application of the Transformative Use ("TU") test was inconsistent with the very precedent it cites, *Comedy III Productions v. Gary Saderup*, 21 P.3d 797 (Cal. 2001).[1] In that case, and in subsequent cases like *Winter v. DC Comics*, 69 P.3d 473 (Cal. 2003), the California Supreme Court analyzed the use of a celebrity likeness in the context of the work *as a whole*, rather than narrowing its focus to the specific depiction of the celebrity as such. The Panel Decision did just the

---

[1] For the reasons set forth in Amici's previous brief in this appeal, Amici respectfully urge the Court to reconsider not just how the panel applied the TU test in this case, but whether the Third Circuit should adopt the TU test at all. The TU test, while arguably flexible enough to be speech-protective when applied appropriately by a judge in the individual case, simply does not provide adequate guidance to individual creators with respect to their ability to accurately depict real persons and situations. The *Rogers*/Restatement ("RR") test better respects the Supreme Court's distinction between commercial and noncommercial speech, in so doing striking a sensible balance between the interests of celebrities on the one hand, and speakers and the public to which they speak on the other. To its great credit, the RR test draws a much brighter line than the TU test, thereby minimizing the likelihood of harmful chilling effects while promoting the laudable goal of a free, open marketplace of ideas.

opposite, focusing almost entirely on the avatar resembling Hart and the extent to which Hart's likeness alone was transformed.

A proper application of the TU test would have examined the game's overall context, asking whether the game *as a whole* contained sufficiently significant transformative elements such that the use of Hart's likeness in the game paled in comparison. Setting aside whether the analysis would have tipped in EA's favor if the Panel had applied the TU test correctly (though Amici believe it would have), an application consistent with *Comedy III* and *Winter* would have more properly accounted for EA's free speech interests. Focusing on a celebrity's likeness alone, particularly where the user has made a *creative* choice to present a realistic rendering of that likeness, presumptively favors the celebrity's commercial interests: it necessarily leads a court to both count that artistic choice against the user, and to discount the creative expression in the work as a whole.

The panel's application of the TU test also conflicts with the analyses of sister circuit courts that have adopted that test, including, most notably, the Sixth Circuit's analysis in *ETW Corp. v. Jireh Publishing*, 332 F.3d 915 (6th Cir. 2003), on which the panel nominally relied in its decision in this case. *Jireh* concerned the use of photographs of golfer Tiger Woods in a collage-style painting. There, the court concluded the painting did not infringe Woods' publicity rights because his likeness was placed in the context of a collage that conveyed an artistic message

3

about an historical event and Woods' role in that event. By considering the likeness in context, the case appropriately weighed the message and, by extension, the First Amendment's protection of that message. By contrast, the panel expressly denied the relevance of overall context to the TU test. Such disregard is mistaken.

## II.    The Panel Decision Sets A Dangerous Precedent For Free Speech

The Panel Decision claims that the TU test "effectively restricts rights of publicity claims to a very narrow universe of expressive works." At 17. Unfortunately, the panel is wrong. Publicity rights are unique in both their indeterminate breadth and their potential to be used as dissent-silencing cudgels. While copyrights protect original expression and patents protect new inventions, publicity rights extend protection to basic facts and inherent personal attributes, such as a person's name, likeness, voice, or other personal characteristics. *See Facenda v. NFL Films, Inc.*, 542 F.3d 1007 (3d Cir. 2008) (use of plaintiff's voice); *C.B.C. Distrib. & Mktg., Inc. v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818 (8th Cir. 2007) (use of ballplayers' names and statistics). Indeed, publicity rights have been invoked where a defendant has done nothing more than *remind* us of a celebrity, or simply mention her name. *See White v. Samsung Electronics America, Inc.*, 971 F.2d 1395, 1399 (9th Cir. 1992) (reversing dismissal of publicity rights claim because robot in dress and wig turning letters "evoke[d]" Vanna White's identity); *Lohan v. Perez (Pitbull)*, Case 2:11-cv-05413,

4

Doc 11 (E.D.N.Y. Mar. 12, 2012) (asserting right of publicity claim based on fleeting mention of celebrity's name in a rap lyric).

These remarkably broad rights have been asserted against a wide array of First Amendment speakers, including artists, filmmakers, and politicians, as well as publishers of everything from political biographies to comic books, and even baseball statistics. *See, e.g.*, *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860 (1979) (film depicting fictionalized biography of Rudolph Valentino); *Seale v. Gramercy Pictures*, 949 F. Supp. 331 (E.D. Pa. 1996) (book and film depicting a founder of the Black Panthers); *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400 (2001) (use of player statistics and depictions of their playing styles in documentaries, game day programs, and websites).

Some of these plaintiffs have prevailed; others have not. But whether a plaintiff prevails or not, the risk of liability and the cost of defending against a lawsuit are themselves enough to chill expression. Like contractual bargaining, creation occurs in the shadow of the law—one wrongly-decided decision in a single jurisdiction has the possibility to dramatically shift the foundations on which creative endeavors are built. First Amendment speakers should not be forced to guess whether their speech and expression is or is not legal, nor should they need to endure years of expensive litigation to establish their rights. This Court must lay

down a rule with clear and predictable boundaries lest speakers be dissuaded en masse from depicting reality for fear of a potential lawsuit.

The Panel Decision does just the opposite and, as a result, could have a devastating impact on creative works that relate to real people and real stories. Any work based on historical events—be it a movie, novel, biography, website, or videogame—*must* incorporate factual information and real people to create its setting or characters. *See Guglielmi*, 25 Cal. 3d at 869 (Bird, C.J., concurring) ("No author should be forced into creating mythological worlds or characters wholly divorced from reality."). Both the speaker and audience's interests in factual accuracy are not diminished when fiction is added to fact to create biopics like *Bonnie & Clyde*. Nor are those speech interests diminished when the fictional layer is supplied by a video game player rather than a screenwriter or film producer.

Under the Panel Decision, those interests may all-too-easily be subordinated to a celebrity's commercial interest. As a result, risk-averse creators wary of litigation will feel pressure to obtain permission from participants in historical events in order to depict them, whether factually or fictionally. And that is assuming consent can be obtained. In practice, this hold-up problem could leave entire subjects off-limits. It would likely have been impossible to make *The Social Network* (a recent film documenting the rise of Facebook) if the Winklevoss

twins—major characters in the narrative—had been given veto rights over the film's (very negative) portrayal of them.

Biopics have long included minor real-world characters who, just as in *NCAA Football*, exist within the story to add veracity and authenticity to a historical reimagining. Amici are concerned that the Panel Decision would make important films like *Hoffa* (1992), *The Insider* (1999), and *Milk* (2008) extremely difficult to produce. Even more disturbing is the prospect that the technique of reenactment, universally recognized as a legitimate documentary filmmaking practice, might now be possible only when the subject of the documentary gives his or her permission. Documentary filmmakers use reenactment to explore how a real world event might have occurred—just as Appellant did in this case. Amici are deeply concerned that if the Panel Decision were permitted to stand, critically acclaimed films such as *The Thin Blue Line* (1988), *The Arbor* (2010), and *The Imposter* (2012) would no longer be possible to make.

## CONCLUSION

For the above reasons, Amici urge the Court to rehear this case *en banc.*

Dated: June 4, 2013                    By:  /s/ Julie A. Ahrens
                                       Julie A. Ahrens
                                       Stanford Law School
                                       Center for Internet and Society
                                       559 Nathan Abbott Way
                                       Stanford, CA 94305
                                       Telephone: (650) 723-2511
                                       *Attorneys for Amici Curiae*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION,
## TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS
## PURSUANT TO FED. R. APP. P. 32(a)(7)(C)

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify as follows:

1.    This Brief of Amicus Curiae In Support Of    Petition for Rehearing
En Banc    complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because this brief contains  1653  words, excluding the parts of the
brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

2.    This brief complies with the typeface requirements of Fed. R. App.
P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this
brief has been prepared in a proportionally spaced typeface using Microsoft
Word 2007, the word processing system used to prepare the brief, in 14 point font
in Times New Roman font.

Dated: June 4, 2013                By:  /s/ Julie A. Ahrens__
                                   Julie A. Ahrens
                                   Stanford Law School
                                   Center for Internet and Society
                                   559 Nathan Abbott Way
                                   Stanford, CA 94305
                                   Telephone:  (650) 723-2511
                                   Facsimile:   (650) 725-4086
                                   jahrens@law.stanford.edu

                                   *Attorneys for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on June 4, 2013.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: June 4, 2013

By:  /s/ Julie A. Ahrens__
Julie A. Ahrens
Stanford Law School
Center for Internet and Society
559 Nathan Abbott Way
Stanford, CA 94305
Telephone:  (650) 723-2511
Facsimile:   (650) 725-4086
jahrens@law.stanford.edu

*Attorneys for Amici Curiae*

## <u>CERTIFICATION OF VIRUS CHECK</u>

I hereby certify that a virus check was performed on the electronically filed

PDF version of the brief using Sophos v.9.5 and that no viruses were found.


Dated: June 4, 2013                              By:   /s/ Julie A. Ahrens__
                                                 Julie A. Ahrens
                                                 Stanford Law School
                                                 Center for Internet and Society
                                                 559 Nathan Abbott Way
                                                 Stanford, CA 94305
                                                 Telephone:  (650) 723-2511
                                                 Facsimile:    (650) 725-4086
                                                 jahrens@law.stanford.edu

                                                 *Attorneys for Amici Curiae*

## <u>CERTIFICATION OF BAR MEMBERSHIP</u>

In accordance with 3rd Circuit LAR 46.1(e) Julie A. Ahrens certifies

that she is a member of the Bar of this Court.


Dated: June 4, 2013                          By:  /s/ Julie A. Ahrens__
                                             Julie A. Ahrens
                                             Stanford Law School
                                             Center for Internet and Society
                                             559 Nathan Abbott Way
                                             Stanford, CA 94305
                                             Telephone:  (650) 723-2511
                                             Facsimile:   (650) 725-4086
                                             jahrens@law.stanford.edu

                                             *Attorneys for Amici Curiae*

## <u>CERTIFICATION OF IDENTICAL COMPLIANCE OF BRIEFS</u>

I certify that the electronically filed PDF and hard copies of the brief are

identical.

Dated: June 4, 2013                     By:   /s/ Julie A. Ahrens
                                        Julie A. Ahrens
                                        Stanford Law School
                                        Center for Internet and Society
                                        559 Nathan Abbott Way
                                        Stanford, CA 94305
                                        Telephone:  (650) 723-2511
                                        Facsimile:    (650) 725-4086
                                        jahrens@law.stanford.edu

                                        *Attorneys for Amici Curiae*